[No. 20767-2-II.   Division Two.   September 26, 1997.]

THE EQUITY GROUP, INC., *Respondent*, v. OLIVER M. HIDDEN, *Appellant*.

*Gideon D. Caron* of *Morse & Bratt*, for appellant.

*Lee Aronson* of *Schulte, Anderson, Downes, Carter & Aronson, P.C.*, for respondent.

ALEXANDER, J.* — Oliver M. Hidden appeals an order of the Clark County Superior Court confirming an award made by an Oregon arbitrator in an arbitration between Hidden and The Equity Group, Inc. (Equity). The primary issue presented is whether the trial court had jurisdiction to confirm an arbitration award made in a private arbitration proceeding in another state. We hold that the trial

---

*Justice Gerry L. Alexander is serving as a judge pro tempore of the Court of Appeals, Division II pursuant to CAR 21(c).

court possessed such jurisdiction and, therefore, affirm its order confirming the arbitration award.

Although we have no record of what facts were considered in the arbitration proceeding itself, we are able to glean certain undisputed facts relating to the arbitration proceeding from the briefs of the parties and the slight record that we have before us. In a contract entered into in February 1993, and amended in April 1993, Hidden, a Washington resident, agreed to purchase a parcel of Oregon real property from Victor Josi and Gloria Moore. The contract provided that upon the closing of the sale, Hidden would pay a brokerage fee to Equity for acting as Hidden's Realtor in this transaction. Hidden deposited $5,000 in earnest money, but paid no further money to close the deal with Josi and Moore. In December 1994, The Morrison Group, Inc. (Morrison), signed a contract with Hidden in which Morrison agreed to purchase Hidden's contractual interest in the property. This new contract, which was signed by Equity's agent, required Hidden to pay a commission of $40,950 to Equity upon the closing of the sale. Hidden signed this contract in Clark County, Washington. The contract provided that any party to it had the right to demand arbitration through the American Arbitration Association (AAA) if a dispute arose between the parties. In a subsequent contract, Hidden finally sold his contractual interests in the property to Morrison, who agreed to pay Equity $40,950 on Hidden's behalf. This contract was not signed by an agent of Equity.

Following Hidden's sale of his contractual interests in the property to Morrison, Hidden failed to pay $40,950 to Equity. Equity's attorney then mailed to Hidden a demand letter dated November 30, 1995, for arbitration under AAA rules. Hidden received this letter by regular mail. A December 29, 1995, notice of the location and date of the arbitration was mailed by the AAA's regional office in Seattle to both parties, as was an accompanying letter delineating the arbitrator's compensation rate and requesting deposits from both parties. The arbitration

took place on February 23, 1996, in the Portland, Oregon office of the arbitrator, David Roy, an attorney. The arbitrator made an award, which provided that Equity was entitled to $40,950 from Hidden as the real estate commission it earned on the sale. The arbitrator also awarded prejudgment interest to Equity as well as interest on the commission beginning July 12, 1995, at the rate of 9 percent per annum until paid. He also awarded Equity $750 in administrative fees and $1,182.50 arbitration costs.

Equity thereafter filed a motion in Clark County Superior Court asking for confirmation of the arbitration award pursuant to RCW 7.04.150. Hidden moved to dismiss the action for lack of subject matter jurisdiction. Hidden also filed objections to confirmation of the award. The trial court denied Hidden's motion to dismiss and confirmed the award. This appeal followed.

# I
## JURISDICTION

We first address Hidden's argument that the Clark County Superior Court lacked subject matter jurisdiction to confirm the arbitration award to Equity given that the arbitration took place in Oregon. This is the threshold issue in this appeal because "[a] judgment is void if entered without subject matter jurisdiction." *Bour v. Johnson*, 80 Wn. App. 643, 646, 910 P.2d 548 (1996) (citing *In re Marriage of Ortiz*, 108 Wn.2d 643, 649, 740 P.2d 843 (1987)). The determination of whether the Clark County Superior Court had subject matter jurisdiction in this matter is a question of law that we review de novo. *See Bour*, 80 Wn. App. at 647.

RCW 7.04.150 allows court confirmation of arbitration awards upon application to the court by any party to the arbitration.[1] Hidden's contention is that this statute requires the award to have been made in Washington. No such constraint is evident, however, from the plain

[1]The pertinent language of RCW 7.04.150 is as follows:

language of the statute. "In judicial interpretation of statutes, the first rule is 'the court should assume that the legislature means exactly what it says. Plain words do not require construction.'" *King County v. Taxpayers of King County*, 104 Wn.2d 1, 5, 700 P.2d 1143 (1985) (quoting *City of Snohomish v. Joslin*, 9 Wn. App. 495, 498, 513 P.2d 293 (1973)).

■■ Moreover, *personal* jurisdiction has been found in a case where both parties to an in-state arbitration award confirmed in Washington resided in foreign states. *Keen v. IFG Leasing Co.*, 28 Wn. App. 167, 622 P.2d 861 (1980). There, an Oregon logger, Keen, entered into an equipment lease with a Minnesota corporation, IFG Leasing Co. (IFG). The lease provided that any disputes relative to the lease were to be arbitrated in Seattle. *Keen*, 28 Wn. App. at 168-69. An arbitration pursuant to this clause took place, and an award was made in favor of IFG. The King County Superior Court confirmed the arbitration award. Keen appealed, arguing that the King County Superior Court lacked personal jurisdiction over him because IFG had not complied with RCW 4.28.180, the statute pertaining to personal service on out-of-state defendants. *Keen*, 28 Wn. App. at 172. In upholding the trial court's confirmation, however, Division One of the Court of Appeals noted that such a confirmation "cannot be equated with bringing a new action." *Keen*, 28 Wn. App. at 172. Rather, a motion to confirm an arbitration award "is no more than a motion for an order to enforce an award of compensation already made by the arbitrators, pursuant to *contract*." *Thorgaard Plumbing & Heating Co. v. County of King*, 71 Wn.2d 126, 132, 426 P.2d 828 (1967) (emphasis added).

Thus, rules pertaining to a civil court proceeding are held in abeyance where the court considering an arbitra-

---

"At any time within one year after the award is made, unless the parties shall extend the time in writing, any party to the arbitration may apply to the court for an order confirming the award, and the court shall grant such an order unless the award is . . . vacated, modified, or corrected, as provided in RCW 7.04.160 and 7.04.170."

tion award exercises its "mere ministerial duty of entering judgment on the award." *Thorgaard,* 71 Wn.2d at 132 (citing 6 C.J.S. *Arbitration and Award* § 129). This serves the objective of arbitration, which is "to *avoid,* what some feel to be, the formalities, the delay, the expense and vexation of ordinary litigation." *Thorgaard,* 71 Wn.2d at 132 (citing *Son Shipping Co. v. De Fosse & Tanghe,* 199 F.2d 687 (2d Cir. 1952)). Further illustration of the pro forma nature of judicial confirmation of arbitration awards is that "[t]he validity of an award, otherwise valid, shall not be affected by the fact that no motion is made to confirm it." RCW 7.04.150.

█ █ In essence, the present case involves the enforcement of a contract[2] to buy an Oregon property entered into by a Washington resident. In a case involving a breach of a contract between Idaho and Washington corporations that involved Idaho land, the Washington Supreme Court has noted that "[t]he view is generally maintained that where the relief sought acts upon the party personally and does not require the court to deal directly with 'the estate itself', the proceeding need not be maintained in the state or county where the property is situate." *Silver Surprize, Inc. v. Sunshine Mining Co.,* 74 Wn.2d 519, 525, 445 P.2d 334 (1968) (citations omitted). Adopting this view, the Court held:

> No one would question that an action brought to try the naked question of title to land must be brought in the state where the land is situate. However, where the basis of the action is transitory and one over which the court has jurisdiction, the court may hear and determine the action even though a question of title to foreign land may be involved, and even though the question of title may constitute the essential point upon which the case depends.

*Silver Surprize,* 74 Wn.2d at 526 (citing *Massie v. Watts,* 10 U.S. 148, 158, 6 Cranch 148 (1810)).

---

[2]"[T]he duty to submit a matter to arbitration arises from the *contract* itself." *W.A. Botting Plumbing & Heating Co. v. Constructors-Pamco,* 47 Wn. App. 681, 683, 736 P.2d 1100 (1987) (emphasis added) (citing *AT&T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)).

Hidden claims that to allow the party prevailing in an arbitration "to confirm the award in any State of it's [sic] choosing essentially allows that party to forum shop." Reply Br. of Appellant at 1. That contention greatly overstates the issue here. Our acknowledgment that Equity could confirm an Oregon arbitration decision that imposes a payment obligation upon a Washington resident, Hidden, is *not* tantamount to allowing those prevailing in all arbitrations the freedom to confirm arbitration results in states where no party to the arbitration resides. The trial court did not err in denying Hidden's motion to dismiss for lack of subject matter jurisdiction.

## II
## NOTICE OF ARBITRATION

Hidden next contends that the trial court erred in confirming the award despite the fact that Equity's notice of arbitration did not comply with RCW 7.04.060. Under that statute, a notice of intention to arbitrate "must state in substance that unless within twenty days after its service, the party served therewith shall serve a notice of motion to stay the arbitration, he shall thereafter be barred from putting in issue the existence or validity of the agreement or the failure to comply therewith." RCW 7.04.060. Equity's notice did not contain this statement. Hidden argues that his dispute with Equity was not validly arbitrated as a result.

We have previously held that arbitration awards can be vacated only upon the grounds set forth in RCW 7.04.160. *Westmark Properties, Inc. v. McGuire*, 53 Wn. App. 400, 402, 766 P.2d 1146 (1989). That statute states that such grounds arise where "there was no valid submission or arbitration agreement *and* the proceeding was instituted without . . . serving a notice of intention to arbitrate, as provided in RCW 7.04.060 . . . ." RCW 7.04.160(5) (emphasis added).

Thus, even assuming that the notice of intention to

arbitrate provided by Equity to Hidden was inadequate due to its lack of the statutorily-required advisement of Hidden's rights, that shortcoming alone is not a fatal defect *if* the agreement itself was valid. "Nothing in the language of RCW 7.04.060 . . . suggests that the notice is intended to communicate anything more than the party's general intention to proceed to arbitration." *Martin v. Hydraulic Fishing Supply, Inc.*, 66 Wn. App. 370, 375, 832 P.2d 118 (1992) (footnote omitted). That essential information clearly was communicated, and Hidden proceeded into arbitration with the assistance of counsel.

Hidden also makes much of the fact that Equity's notice of intention to arbitrate was mailed to him by Equity via regular mail, while RCW 7.04.060 requires that such service of process take place "personally or by registered mail." But "personal service statutes require only substantial compliance." *Martin v. Triol*, 121 Wn.2d 135, 144, 847 P.2d 471 (1993) (footnote omitted). The purposes of RCW 7.04.060 were substantially complied with when Hidden was put on notice, in a timely fashion, of Equity's intention to arbitrate — notwithstanding the means of transmission.

Accordingly, the shortcomings associated with Equity's notice of intention to arbitrate did not prejudice Hidden's right to a fair arbitration. The trial court, therefore, did not err in refusing to vacate the award on the basis of improper service.

### III
### ARBITRATOR'S AWARD

Hidden next argues that the arbitrator erred in awarding the commission to Equity because his sale to Morrison had not closed under the terms of the December 1994 agreement. Hidden further argues that the arbitrator erred in awarding compensation to himself, as well as prejudgment interest, fees and costs to Equity.

The standard of review of an arbitration award is highly deferential:

Arbitrators, when acting under the broad authority granted them by both the agreement of the parties and the statutes, become the judges of both the law and the facts, and, unless the award *on its face* shows their adoption of an erroneous rule, or mistake in applying the law, the award will not be vacated or modified.

*Northern State Constr. Co. v. Banchero*, 63 Wn.2d 245, 249-50, 386 P.2d 625 (1963) (emphasis added) (citing *Carey v. Herrick*, 146 Wash. 283, 263 P. 190 (1928)). As the Washington Supreme Court has observed, the primary objective behind arbitration, the avoidance of litigation, would be frustrated were a trial court able to conduct a trial de novo upon review of an arbitration award. *Boyd v. Davis*, 127 Wn.2d 256, 262, 897 P.2d 1239 (1995). Indeed, a trial de novo would be impractical — if not impossible — given that state law "does not require a separate statement of findings of fact and conclusions of law in an arbitrator's award." *Barnett v. Hicks*, 119 Wn.2d 151, 156, 829 P.2d 1087 (1992). Instead, as we have noted, "[t]he evidence before the arbitrator will not be considered." *Westmark Properties*, 53 Wn. App. at 402 (citing *Puget Sound Bridge & Dredging Co. v. Frye*, 142 Wash. 166, 178, 252 P. 546 (1927)).

The scope of appellate review of a trial court's action with regard to an arbitration award "is limited to that of the court which confirmed, vacated, modified or corrected that award." *Barnett*, 119 Wn.2d at 157. Thus, while an examination of the language of the arbitration award is proper, Hidden contends that he is entitled to a higher level of review than that which is allowable.

Hidden argues that his contract with Morrison provided that only "closing" could compel his duty to pay a commission to Equity and that the sale had not closed. Br. of Appellant at 7. But, the arbitrator apparently made a factual determination that the sale had closed — a decision within the broad powers conferred upon him by the arbitration agreement, which stated in pertinent part:

All parties agree to settle any disputes that arise out of, or

relating to the agreement in accordance with the American Arbitration Association. Arbitration shall be binding of and to all parties. Any award rendered by the arbitrator *shall* be final and the judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

Clerk's Papers (CP) at 10 (emphasis added).

It was the arbitrator's prerogative to conclude that Equity was entitled to the commission, and the factual inquiry that Hidden calls for is inappropriate. In support of this request, Hidden relies on two Division One opinions, *Kennewick Educ. Ass'n v. Kennewick Sch. Dist. No. 17*, 35 Wn. App. 280, 666 P.2d 928 (1983), and *Agnew v. Lacey Co-Ply*, 33 Wn. App. 283, 654 P.2d 712 (1982), *review denied*, 99 Wn.2d 1006 (1983). Those cases are easily distinguishable from the instant. In *Kennewick Educ. Ass'n*, the court held that an award of punitive damages by an arbitrator clearly violated Washington public policy, which disallows punitive damages unless a statute provides for them. *Kennewick Educ. Ass'n*, 35 Wn. App. at 282. In *Agnew*, the court held that the language in the contract underlying the arbitration clearly called for an award of attorney's fees to the prevailing party, which the arbitrator declined to make. *Agnew*, 33 Wn. App. at 288.

As the Washington Supreme Court has noted in confining those cases to their facts, the underlying contracts that gave rise to arbitration were examined by the trial courts only "to ascertain the law governing the disputed point." *Boyd*, 127 Wn.2d at 260. Furthermore, we have previously noted how limited the contractual review in *Agnew* was, stating that "[t]he *Agnew* court . . . did not have to go behind the award to determine the value of each side's various claims, nor the arbitration panel's resolution of these claims." *Phillips Bldg. Co. v. An*, 81 Wn. App. 696, 704, 915 P.2d 1146 (1996).

In contrast, the arbitration language in the contract in the present case is "broad" and "contain[s] no exclusion of any sort." *Boyd v. Davis*, 75 Wn. App. 23, 27, 876 P.2d 478 (1994), *aff'd*, 127 Wn.2d 256 (1995). The trial court did not

err in confirming the arbitration award of the commission to Equity because it was not a clear error upon the face of the award and thus fell within the arbitrator's powers.

Finally, Hidden invokes the AAA's Arbitration Rules (Commercial Rules) to argue that "[n]othing in these rules put Mr. Hidden on notice that he would be exposed to a claim for interest or a claim for $1,182.50 of Arbitrator compensation." Reply Br. of Appellant at 5. However, a prearbitration letter from the AAA to both parties *did* inform Hidden that the arbitrator's hourly compensation rate would be $150, and it requested that he sign a compensation stipulation form and submit it, together with a $600 deposit toward that compensation and other expenses, to the AAA. This letter accompanied the official notice of the hearing.

The record does not indicate that Hidden signed the form or submitted the deposit. However, he participated in the arbitration after *receiving this notice* and there is no record of any protest by Hidden at the arbitration concerning this compensation arrangement. The Commercial Rules provide that "[a]ny party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object." Commercial Rules § 38, CP at 61. In any event, the resolution of this issue would require a factual inquiry that would stray impermissibly into the province of the arbitrator. There is no clear error on the face of the award in the awarding of this compensation.

■■ ■■ Even assuming, as Hidden argues, that the awards for prejudgment interest, fees and costs were not requested by Equity, the Commercial Rules permit an arbitrator to "grant any remedy or relief that the *arbitrator* deems just and equitable and within the scope of the agreement of the parties." Commercial Rules § 43 (emphasis added), CP at 61. That authority, coupled with the even broader grant of authority conveyed by the arbitration

clause of the contract itself in the present case, places the arbitrator's award of these amounts within his discretion. As we have noted, judicial review of an arbitration award "does not include a review of the merits of the case." *Phillips Bldg. Co.*, 81 Wn. App. at 701 (citing *Barnett*, 119 Wn.2d at 157).

We find that the trial court did not err in confirming the arbitration award of the prejudgment interest, fees and costs because there was no clear error upon the face of this award and it thus fell within the arbitrator's powers.

Affirmed.

HOUGHTON, C.J., and MORGAN, J., concur.