IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JOHN ROUSE and KARMA ROUSE, husband and wife, | ) ) ) | No. 40525-7-III |
| Respondents, | ) ) | |
| v. | ) ) | |
| MONS TERRAM, LLC, a Wyoming limited liability company, | ) ) ) | UNPUBLISHED OPINION |
| Appellants. | ) ) | |

FEARING, J. — Mons Terram, LLC (Mons Terram) appeals the superior court's confirmation of an arbitration award on the grounds that the arbitrator exceeded his authority and the superior court enforced a settlement rather than confirming an arbitrator's award. We disagree with both contentions and affirm the award. In doing so, we reject respondents John and Karma Rouse's contention that Mons Terram untimely filed its objection to confirmation.

FACTS

This dispute arises from the use of adjoining parcels owned by John and Karma Rouse and Mons Terram. The question on appeal concerns a purported settlement between the parties after mediation.

John and Karma Rouse own real property in Spokane County adjacent to property owned by Mons Terram. The two parcels lie on Spokane's west plains near Grove Road's intersection with Interstate 90. The Spokane International Airport sits nearby. On its land, Mons Terram, a Wyoming limited liability company, seeks to develop a 110-acre light industrial park christened Abbott Grove Commerce Park. On April 23, 2020, the Rouses sued Mons Terram to enforce a 60-foot road easement across Mons Terram's property.

The parties participated in mediation on August 7, 2023, to resolve the lawsuit prior to trial. Gary Schimmels, owner, sole member, and manager of Mons Terram, and his wife, Nancy Schimmels, attended the mediation on behalf of Mons Terram. Esteemed retired Spokane County Superior Court Judge Michael Price acted as the parties' mediator. By the end of the mediation, the parties and Judge Price believed a settlement agreement had been reached, but the parties had signed no written agreement.

After mediation but still on August 7, Alexandria Drake, one of Mons Terram's attorneys, prepared and electronically sent a memorandum of understanding

2

(August 7 MOU) to the Rouses' counsel, Brook Cunningham and April Anderson. Drake

copied Judge Michael Price on the e-mail and attachment. The e-mail began a series of

exchanges of proposed MOUs between counsel. We do not quote the provisions of the

e-mail. The provisions concerned the Rouses' relinquishment of the easement in

exchange for fee title land, the Rouses' cooperation with Mons Terram's development,

and the imposition of restrictive covenants. The August 7 MOU ended:

> In the event that there is any unresolved question or potential dispute in the final language of the settlement agreements, the parties agree that Mediator Michael Price will be granted the binding authority to resolve any disputes or issues that may arise with respect to the drafting and/or enforcement of the settlement docs.
> The parties will stipulate to dismissal of the current lawsuit, with prejudice and without fees or costs to either party, within 5 days of full execution of the CR 2A.

Clerk's Papers (CP) at 31.

John and Karma Rouse did not accept the August 7 MOU. On August 8, April

Anderson, co-counsel for the Rouses, sent an e-mail to Alexandria Drake, co-counsel for

Mons Terram, with a revised MOU attached (August 8 MOU). Anderson copied

Judge Michael Price on the e-mail and August 8 MOU. Anderson wrote in the e-mail

that changes afforded finer detail about the boundary line change, a termination date for

the restrictive covenants, and the need for lender consent. Mons Terram disagreed with

the revisions proposed by the Rouses in the August 8 MOU.

3

On August 9, 2023, Robert Dunn, co-counsel representing Mons Terram, e-mailed Brook Cunningham and April Anderson, counsel for the Rouses, with a third version of a memorandum of understanding (August 9 MOU). Dunn copied Judge Michael Price. Dunn wrote that Mons Terram did not agree to use the Exhibit A that the Rouses attached to the August 8 MOU as the boundary line change. Dunn's MOU also wished to impose surveyor costs on John and Karma Rouse. The August 9 MOU closed:

> In the event that there is any unresolved question or potential dispute in the final language of the settlement agreements, the parties agree that Mediator Michael Price will be granted the binding authority to resolve any disputes or issues that may arise with respect to the drafting and/or enforcement of the settlement docs.
> The parties will stipulate to dismissal of the current lawsuit, with prejudice and without fees or costs to either party, within 5 days of full execution of the CR 2A.

CP at 41.

Counsel Brook Cunningham e-mailed Judge Michael Price regarding the August 9 MOU: "This isn't even close to the settlement reached." He e-mailed Robert Dunn on August 10 at 11:39 am:

> The biggest barrier to resolving this matter is the 300 foot issue in relation to parcel 25434.9111 as proposed in your Exhibit A (attached). Your client's proposal the entire day was to come off the hanging chad and follow the line as depicted in this attached Exhibit.
> If your client is willing to stay with this proposal to come of the hanging chad in relation to Parcel 25343.9111 the rest of this can probably still be worked out.

CP at 45. Cunningham copied Judge Price in the e-mail to Dunn.

At 1:47 p.m. on August 10, after speaking with Mons Terram, attorney Robert Dunn e-mailed Brook Cunningham with a copy to Judge Michael Price. The e-mail commented on the boundary line for the property to be deeded to the Rouses. The e-mail added:

> The Schimmels believed that upon leaving the [mediation] session Monday evening that the agreement was for all purposes a done deal. Otherwise, they would not have left until that a writing was completed and signed.

CP at 48.

At 3:11 p.m. on August 10, Judge Michael Price responded to the parties' e-mails:

> I would suggest if an agreement cannot be reached, that each side submits proposed final documents to me with a short memorandum outlining your client's respective position.
> If and ONLY if your clients agree in writing (email will suffice), I will review each side's documents and memorandum and will make a decision about the issue in dispute. I kept significant notes throughout the day and feel I have a good handle on what was and was not agreed to.
> . . . .
> There is no question in my mind that we conclusively resolved this matter. Nevertheless, I am willing to step in and decide the issue to ensure the parties can put this matter behind them. There will be no charge for my additional assistance if it is required.

CP at 47.

Twenty minutes later, Brook Cunningham, attorney for John and Karma Rouse, responded to Judge Michael Price's e-mail:

> John [Rouse] is in agreement on this approach. However, I would suggest both parties submit their own Memorandum of Understanding and

5

exhibit. You can select either parties [sic] version or a mixture of the two and the parties are bound by your decision. We can work off of the original one prepared that night [August 7].

I think Bob [Dunn, Mons Terram's counsel] and I are in agreement that the two main issues are (1) the new proposed property line on parcel 25343.9111; and (2) the scope of the agreement not to opposing the zone change requested by Bob's client. However, I think there are some smaller issues such as who bears the cost of the survey and boundary line adjustment that would could [sic] be better resolved with each party submitting their own Memorandum of Understanding at what settlement was reached.

I will wait to hear if Bob's client is agreeable to this too.

CP at 50. Robert Dunn replied the next day:

Judge Price—Thank you for your email yesterday. Yes, the Schimmels are likewise in agreement with the procedure you outlined below going forward in order to reach the conclusive finality they believed had been accomplished before they left the mediation on Monday evening.

However, I believe that both parties in advance of the suggested respective short memorandums to be submitted for your consideration, without the need for any following rebuttal memos, should first submit a single paragraph listing the issue(s) in 10 words or less (not argument), that each party now believes remains unresolved and in need of dispositive rulings . . .

As for the suggestion of working "off of the original one (exhibit) prepared that night", I believe that may be where a disconnect has occurred. Each party should submit their own exhibit iteration reflecting what they believed was agreed to, knowing that you did take and work from significant notes, and have a good handle on what transpired. If this is an agreeable approach, the parties should be able to generate and mutually exchange their issue lists by this afternoon, with respective Memos to be submitted by noon this next Wednesday . . .

CP at 50.

6

Robert Dunn sent a follow up e-mail later on August 11, which message identified issues requiring Judge Michael Price's resolution:

> 1. The width of the boundary adjustment needed to resolve the 'hanging chad' issue;
> 2. The restrictive covenant to be absolute and in perpetuity; and
> 3. Rouse responsibility for any closing costs, fees, taxes to complete the land swap.

CP at 53. Two hours later, April Anderson, Cunningham's co-counsel, sent Judge Price and Robert Dunn an e-mail listing issues needed for resolution as identified by the Rouses:

> 1. Issue 1: Boundary Line Adjustment: Scope and extent of the boundary line adjustment between parcels .9111 (Mons Terram) and .9110 (Rouse) from northeast corner of "hanging chad"; surveyor/process for boundary line adjustment documentation and who pays costs of survey, certificate of exemption and recording fees; lender consent and partial release required due to liens on Rouse property (failure to obtain lender consent and partial release will constitute a default under Rouse loan documents and result in transfer of property to Mons Terram subject to the Deeds of Trust)
> 2. Issue 2: Scope and extent of Rouse agreement not to object to zoning change application CPA-02-22 (as shown with light industrial area and 38 acres of mixed use in the map from Drake via email 6.23.23 and used throughout mediation) and agreement not to object to application for development of any use permitted in the underlying zone upon approval of such zoning change application. This language is consistent with the language included in all offers from Rouse during mediation (taken from July 6 Rouse offer letter)
> We will send out revised MOU Monday.

CP at 55.

7

On August 15, Judge Michael Price wrote to counsel. In his e-mail, Judge Price

recognized that the parties had asked him and that he had agreed "to serve as a final

arbiter on these limited issues." CP at 60. Judge Price informed the parties that, if they

agreed, he would resolve the differences when he returned from his son's wedding. The

parties agreed to Judge Price's proposed timeline.

Judge Michael Price e-mailed the parties on September 11:

> So at this point, I have decided to handle this in much the same way
> as I would if I had contested presentment in Superior Court. Under those
> circumstances, I instruct counsel to forward me pleadings which they
> believe are an accurate reflection of my ruling. If counsel cannot agree on
> one set of documents (as is the case here) then I ask them to each draft their
> own set and submit them to me for review. If I don't agree with either set
> the attorneys have prepared, I reserve the right to draft my own final
> pleadings to sign.
> Here, I would like each counsel to prepare a final agreement which
> you believe accurately reflects our settlement reached on August 7. Please
> send the document(s) to me in Word so I can make changes and/or
> deletions as necessary and add a line at the bottom of the document for my
> signature.
> If you would like to provide me a short memorandum which
> explains your version of the settlement and why I should sign it, that would
> be helpful. As I indicated earlier, I will either sign one set of the
> documents, or will draft my own to sign.

CP at 62.

Counsel for the Rouses e-mailed Judge Michael Price their final proposed MOU

and exhibit. Mons Terram sent a supplemental legal memorandum regarding issues to be

resolved by Judge Michael Price. Mons Terram attached, to the legal memorandum,

Exhibit A, which it identified as the settlement agreement reached after mediation on

August 7.

On September 21, 2023, Judge Michael Price sent the parties his decision. In the

ruling, Judge Price wrote, in part:

> Please find enclosed a final decision I have drafted following our day long mediation on August 7th, 2023. As you will recall, I was assigned responsibility to determine the parameters of several terms of our agreement which remained in dispute after we completed our mediation.
> In that my decision is final and not subject to review, I'm going to limit my comments here, except to say that I thoroughly reviewed the copious notes I took on August 7th, carefully studied the written memorandums and e-mails counsel provided me and studied some law that I felt might impact the terms of any final agreement reached in this matter.

CP at 227. Judge Price's final MOU (Price MOU) declared in its entirety:

> Memorandum of Understanding
> re. Spokane Superior Court Case No. 20-2-01295-32

> Stipulate to quiet title re. Mons Terram's Parcels, extinguishing in particular any claim to any easement across Parcel No. 25342.9084 and/or any other claim or interest in Mons Terram's properties except as created by and set forth in the settlement agreement.
> Maintain status quo re. Parcel No. 25335.9038
> Mons Terram gets the "handing chad" on the northwest corner of Rouse's property, parcel no. 25343.9110, the new east property line to be determined, and the western boundary like of parcel .9110 will be redrawn from the "hanging chad" in a straight line down as depicted on Exhibit A attached hereto and incorporated by reference, with property within such red shaded area to be transferred from Mons Terram to Rouse.
> Rouse gets approximately 4.5 acres of Parcel 25345.9109, with the boundary line adjusted to form a straight line to the east from the northern most line of Parcel No. 25343.9110, as also depicted on the attached Exhibit A in the red shaded area.

9

The parties will complete boundary line adjustments concerning the foregoing property transfers, with the survey and certificate of exemption work to be performed and completed by Mr. Todd Whipple at Mons Terram's cost, subject to review and approval by a surveyor hired by Rouse, at Rouse's cost. The boundary line adjustments will be subject to consent by any lender with a security interest in the properties and partial release from any security instrument so that the properties will be transferred free and clear of said liens. Recording costs and any other costs, except as noted above, will be split by the parties.

Rouse will amend Mons Terram's easement (Spokane County AFN 6778822) to extend the easement across Parcel No. 25343.9110 north to the new boundary line of Mons Terram's property, parcel no. 25345.9109.

Rouse will not object to CPA-02-022 as proposed for the 38 acres on the depiction emailed to counsel for Rouse by counsel for Mons Terram on June 23, 2023, a copy of which is attached as Exhibit B, provided that the light industrial buffers and areas depicted remain substantially as set forth in that depiction. Rouse will not object to application by Mons Terram for any permitted use in either light industrial or mixed-use zones if the above-referenced CPA is approved.

The parties agree that they will work in concert to complete and finalize any and all additional documents required to effectuate in full force and effect, the terms and conditions set forth above.

If there is an unanswered question or potential dispute that cannot be resolved following good faith discussion between counsel and the parties regarding the terms and conditions set forth above, such dispute shall be referred to Binding Arbitration before the Honorable Judge Maryann Moreno (Ret) whose determination shall be final. If Judge Moreno is unavailable, then such dispute shall be referred to the Honorable Judge Clarke (Ret). All professional fees and costs necessary for either Judge Moreno and/or Judge Clarke's assistance in this matter shall be equally divided by the parties.

The parties shall dismiss the current lawsuit pending in Superior Court under Cause No. 20-2-01295-32 with prejudice and without fees or costs to either party which shall be done within 10 business days following receipt of this decision. Counsel for the Plaintiff(s), John and Kama Rouse, shall be responsible for drafting such dismissal and ensuring that the Judicial Department now assigned to hear this matter strikes all further court dates from its calendar.

CP at 228-29. Judge Price signed his MOU as "Final Arbitrator Pursuant to CR 2A."

CP at 75. Judge Price's ruling displeased Mons Terram.

PROCEDURE

On February 1, 2024, John and Karma Rouse filed a motion, in their pending lawsuit, to enforce the settlement agreement and the Price MOU. The Rouses captioned the motion as one to enforce a settlement rather than to confirm an arbitration award. Nevertheless, in a reply brief to the motion, the Rouses asserted that the parties designated Judge Michael Price as arbitrator and the court should confirm the arbitration award.

In response to John and Karma Rouse's motion, Mons Terram contended that Judge Michael Price exceeded his authority when ordering the parties to enter the Price MOU. According to Mons Terram, the parties agreed to allow Judge Price to identify the terms of the agreement reached between the two during the August 7, 2023 mediation, not to issue an independent ruling based on his determination of the best resolution.

After hearing argument, the superior court issued a letter ruling that enforced Judge Michael Price's September 18, 2023 "arbitration decision." CP at 220. The court concluded that the parties had failed to reach a settlement at the end of the August 7 mediation. The parties thereafter agreed to resolve the disputed issues through

arbitration. Judge Price, as arbitrator, issued his ruling through the September 18 Price

MOU.

The trial court labeled its order as one enforcing a settlement agreement.

Nevertheless, in deciding the motion, the trial court referred to the Price MOU as an

arbitration award or decision, not a settlement agreement. In the order, the court found:

> THE COURT FINDS that both parties agreed to be bound by Judge
> Price's arbitrated decision once made through enforceable binding
> arbitration,
> . . . .
> THE COURT FINDS that on September 18, 2023, Judge Price
> issued an enforceable arbitrated decision in the form of a September 18,
> 2023 MOU.

CP at 223-24.

## LAW AND ANALYSIS

On appeal, Mons Terram continues to contest Judge Michael Price's arbitration

decision on the basis that he exceeded his authority. Mons Terram also challenges the

arbitration award as an enforcement of a settlement agreement, rather than an award. In

return, John and Karma Rouse seek affirmation of the superior court's ruling because

Mons Terram failed to timely object to the arbitration award.

### Timeliness of Mons Terram Challenge

John and Karma Rouse disagree with Mons Terram on the merits and also asks

that this court decline to review the merits because Mons Terram failed to timely

12

challenge the arbitration ruling. RCW 7.04A.230(2) demands that a party file, with the superior court, any challenge to an arbitration award within 90 days of receipt of the arbitration award. Mons Terram waited 148 days to file a motion objecting to confirmation of the award.

Mons Terram objects to John and Karma Rouse's assertion of untimeliness on the ground that the Rouses raise the defense for the first time on appeal. Generally, appellate courts will not consider issues raised for the first time on appeal. RAP 2.5(a); *Cole v. Harveyland, LLC*, 163 Wn. App. 199, 209, 258 P.3d 70 (2011). In response, the Rouses, in part, contend they raised untimeliness in supplemental authorities submitted to the superior court. Nevertheless, those supplemental authorities do not assert, let alone mention, a defense of untimeliness.

John and Karma Rouse also contend that they can assert RCW 7.04A.230(2)'s time bar for the first time on appeal under RAP 2.5(a)(1) because the defense impacts the superior court's jurisdiction. The Rouses cite no decision that proclaims a statute of limitations, let alone a deadline for filing a challenge to an arbitration ruling, to be jurisdictional. This court held, in *Federated Services Insurance Company. v. Personal Representative of Estate of Norberg*, 101 Wn. App. 119, 123, 4 P.3d 844 (2000), that a party cannot raise for the first time on appeal an argument that a motion to vacate an arbitration award was untimely.

13

A party may waive the statute of limitations. *Colasurdo v. Esterline Technologies Corporation*, 25 Wn. App. 2d 154, 161, 525 P.3d 610 (2023). A statute of limitations does not divest a trial court of subject matter jurisdiction. *In re Pers. Restraint of Smalls*, 182 Wn. App. 381, 388, 335 P.3d 949 (2014).

We reject the Rouses' defense of untimeliness as untimely.

Confirmation of Award

Mons Terram contends that Judge Michael Price exceeded his authority as arbitrator when purportedly crafting a new settlement agreement rather than identifying the terms to which the parties agreed. In so arguing, Mons Terram emphasizes the superior court's mention that the parties had reached no settlement during the mediation. Thus, according to Mons Terram, Judge Price must have issued a ruling based on his independent analysis. In turn, Judge Price's exceeding of his authority invalidated the award.

We agree with Mons Terram that the parties limited Judge Michael Price's authority to discerning the agreement reached by the parties. Conversely, the parties did not authorize Judge Price to reach an independent decision. We also agree that an arbitrator's exceeding of his authority voids the arbitration award. We disagree, however, with Mons Terram that Judge Price exceeded his authority. Judge Price's

14

arbitration award recognized and deferred to the settlement agreement reached during mediation.

Because arbitration is a creature of contract, the parties' agreement to arbitrate confines the scope of the arbitrator's authority. *Munsey v. Walla Walla College*, 80 Wn. App. 92, 95, 906 P.2d 988 (1995). An arbitration decision is "void" if the arbitrator lacked authority under the parties' agreement to consider the issues raised. *ACF Property Management, Inc. v. Chaussee*, 69 Wn. App. 913, 920, 850 P.2d 1387 (1993).

In order to adjudge the arbitrator's authority and resolve whether he exceeded this authority, we spend time analyzing the e-mail messages flowing among Mons Terram's counsel, John and Karma Rouse's attorney, and Judge Michael Price. On August 10, 2023, Brook Cunningham, attorney for the Rouses, e-mailed Judge Michael Price regarding the August 9 MOU drafted by Mons Terram: "This isn't even close to the settlement reached." CP at 39. Robert Dunn, counsel for Mons Terram, replied on August 10 that "the Schimmels believed that upon leaving the [mediation] session Monday evening that the agreement was for all purposes a done deal." CP at 48. Both messages confirmed a belief that the parties had reached a settlement.

On the afternoon of August 10, 2023, Judge Michael Price responded to counsels' e-mails:

I would suggest if an agreement cannot be reached, that each side submits proposed final documents to me with a short memorandum outlining your client's respective position.

If and ONLY if your clients agree in writing (email will suffice), I will review each side's documents and memorandum and will make a decision about the issue in dispute. I kept significant notes throughout the day and feel I have a good handle on what was and was not agreed to.

. . . .

There is no question in my mind that we conclusively resolved this matter. Nevertheless, I am willing to step in and decide the issue to ensure the parties can put this matter behind them. There will be no charge for my additional assistance if it is required.

CP at 47.

We conclude, as does Mons Terram, that Judge Michael Price, in his August 10 message, proposed that he identify the terms of the settlement reached at mediation, not to issue an independent ruling. John and Karma Rouse do not argue to the contrary. In turn, Judge Price's version of the settlement reached would bind the parties. Judge Price wrote that he took copious notes and knew the terms of the agreement. He insisted the parties conclusively resolved the dispute at mediation.

On August 10, Brook Cunningham, attorney for John and Karma Rouse, expressed the Rouses' agreement to Judge Michael Price's proposal to determine the settlement reached. On August 11, Robert Dunn, counsel for Mons Terram, wrote that Mons Terram likewise agreed with Judge Price's outlined procedure.

On August 15, Judge Michael Price wrote to counsel. In his e-mail, Judge Price recognized that the parties had asked him and that he had agreed "to serve as a final

16

arbiter on these limited issues." CP at 60. The message did not suggest that Judge Price

would resolve the dispute separate from any agreement reached.

On September 11, after the return from his son's wedding, Judge Michael Price

messaged counsel again. Because of the importance of the language of this e-mail, we

repeat its contents:

> So at this point, I have decided to handle this in much the same way
> as I would if I had contested presentment in Superior Court. Under those
> circumstances, I instruct counsel to forward me pleadings which they
> believe are an accurate reflection of my ruling. If counsel cannot agree on
> one set of documents (as is the case here) then I ask them to each draft their
> own set and submit them to me for review. If I don't agree with either set
> the attorneys have prepared, I reserve the right to draft my own final
> pleadings to sign.
> Here, I would like each counsel to prepare a final agreement which
> you believe accurately reflects our settlement reached on August 7. Please
> send the document(s) to me in Word so I can make changes and/or
> deletions as necessary and add a line at the bottom of the document for my
> signature.
> If you would like to provide me a short memorandum which
> explains your version of the settlement and why I should sign it, that would
> be helpful. As I indicated earlier, I will either sign one set of the
> documents, or will draft my own to sign.

CP at 62.

In the September 11 missive, Judge Michael Price expressed his intent to treat the

arbitration process similarly to presentment of findings of fact, conclusions of law, and

orders after a judge's ruling. This presentment procedure entails the judge adhering to

his decision rather than reaching a new decision. So too, Judge Price's comparison of his

17

arbitration procedure to presentment of findings, conclusions, and orders shows that he

intended to adhere to the settlement decision reached by the parties during mediation, not

his reaching a new settlement decision.  Judge Price asked counsel to prepare settlement

agreements that reflected the settlement reached during mediation, a direction confirming

an intent to discern the terms of the settlement reached.  Judge Price further instructed

counsel to write a memorandum that explained his or her client's version of the

settlement reached.  Price did not ask counsel to reargue the parties' positions on the facts

or the law.

Our agreement with Mons Terram that the parties authorized Judge Michael Price

only to discern the settlement of the parties does not end our analysis.  We must now

decide whether Judge Price went beyond this authority.  After repeatedly describing his

limited role, we doubt that the astute Judge Price would exceed his authority.  His

correspondence confirms he did not do so.

We repeat Judge Michael Price's critical September 21 message that accompanied

his MOU:

> Please find enclosed a final decision I have drafted following our
> day long mediation on August 7th, 2023.  As you will recall, I was assigned
> responsibility to determine the parameters of several terms of our
> agreement which remained in dispute after we completed our mediation.
> In that my decision is final and not subject to review, I'm going to
> limit my comments here, except to say that I thoroughly reviewed the
> copious notes I took on August 7th, carefully studied the written

> memorandums and e-mails counsel provided me and studied some law that
> I felt might impact the terms of any final agreement reached in this matter.

CP at 227. Some of the language in the message suggests that Judge Price fashioned his own resolution of the dispute particularly when he writes: "several terms of our agreement which remained in dispute after we completed our mediation." CP at 227. Still, Judge Price mentioned that those terms had parameters, suggesting at least the parties' partial concurrence to the terms.

In the context of a settlement, whether during mediation or negotiations between counsel, the parties draft a written settlement agreement after reaching an *agreement*. Sometimes the details of the precise terms need to be massaged between the parties, but the need for this additional wordsmithing does not detract from the fact that the parties reached an agreement. *Morris v. Maks*, 69 Wn. App. 865, 869–70, 850 P.2d 1357 (1993).

In the September 21 letter, Judge Michael Price also wrote that he carefully studied the written memoranda and e-mails provided and studied some law that he deemed might impact the terms of any final agreement reached in this matter.

Judge Price did not write that he performed legal research to decide, as a judge, the dispute between the parties or to determine how best to resolve the parties' difference. Instead, the study assisted in determining the impact of the settlement agreement reached by the parties.

During the messages from counsel preceding Judge Michael Price's ruling, Mons Terram's counsel never suggested that the parties did not reach a settlement such that Judge Price's discernment of the agreement was impossible. Instead, counsel insisted a settlement had been reached. Mons Terram's dissatisfaction of Judge Price's resolution does not demonstrate that the parties reached no agreement.

The MOUs prepared by both parties assigned to Judge Michael Price the authority to resolve any disputes concerning the drafting of the settlement documents, the final language of the settlement agreement, and the enforcement of the settlement. In other words, both parties preliminarily agreed to permit Judge Price to resolve any disputes. The superior court may have rested its decision on this stipulation. Mons Terram's appeal conflicts with this provision in its proposed MOU.

## Confirmation of Arbitration Award

Mons Terram argues that, even if it is bound by the September 18 MOU, the superior court erred when enforcing the MOU as an arbitration award because John and Karma Rouse sought enforcement of a settlement agreement, not an arbitration award. We agree that the Rouses styled their motion as one to enforce a settlement. Nevertheless, we reject Mons Terram's contention.

RCW 7.04A.220 declares:

20

After a party to the arbitration proceeding receives notice of an
award, the party may file a motion with the court for an order confirming
the award, at which time the court shall issue such an order unless the
award is modified or corrected under RCW 7.04A.200 or 7.04A.240 or is
vacated under RCW 7.04A.230.

A motion to confirm an arbitration award is simply a motion to enforce an award

made by the arbitrators pursuant to contract. *Thorgaard Plumbing & Heating Co., Inc. v.*

*County of King*, 71 Wn.2d 126, 132, 426 P.2d 828 (1967); *Equity Group, Inc. v. Hidden*,

88 Wn. App. 148, 154, 943 P.2d 1167 (1997). No case law suggests the need for the use

of any talismanic words when seeking confirmation of an arbitration award or that

framing the motion as one to enforce a settlement renders invalid an order confirming an

award.

Judge Michael Price signed his decision as a final arbitrator pursuant to CR 2A.

Thus, he also saw his role as both settlement enforcer and arbitrator. In their superior

court pleadings seeking enforcement of the settlement, John and Karma Rouse also

mentioned the desire for confirmation of an arbitration award. The superior court's order

reads that the court confirmed an arbitration award.

We behold Mons Terram's distinction between the confirmation of an arbitration

award and the enforcement of a settlement agreement to lack consequences. No matter

the nomenclature employed, the superior court intends to enforce the resolution of a

21

dispute between the parties.  *Stottlemyre v. Reed*, 35 Wn. App. 169, 171, 665 P.2d 1383 (1983).

Attorney Fees

John and Karma Rouse seek an award of reasonable attorney fees and costs because of a purported frivolous appeal.  We do not deem the appeal thoughtless.  Mons Terram raises legitimate arguments concerning whether Judge Michael Price exceeded his authority.  Mons Terram devoted efforts to defeat the Rouses' contention that it untimely challenged the award.  Thus, we deny the request for fees.

CONCLUSION

We affirm the superior court's enforcement of the settlement agreement and confirmation of the arbitration award.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____        _____
Cooney, J.                                              Murphy, J.